**Robert MAINES, and Teresa McElvain, Plaintiffs,**

v.

**Robert T. HILL, Wer–Mac Express, Inc., Gwendolyn Nunley, and Willie M. Ellis, Defendants.**

**No. 01–2636 D/A (M1).**

United States District Court,
W.D. Tennessee,
Western Division.

March 14, 2002.

Jefferson D. Gilder, Gilder Howell & Associates, P.A., Southhaven, MS, for plaintiffs.

Mark W. Raines, Leitner Williams Dooley & Napolitan, Memphis, TN, for Wer-Mac Express, Inc.

James V. Ball, Ball & Hurst, Memphis, TN, for Willie Ellis.

## ORDER GRANTING M.S. CARRIERS, INC.'S MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

Before the Court is M.S. Carriers Inc.'s ("Carriers") Motion for Summary Judgment, which was filed on December 20, 2001.[1] Based on the following discussion, the Court hereby GRANTS Carriers' motion.

## I. Background

This case arises from an automobile accident which occurred on August 12, 2000, in Shelby County, Tennessee. (M.S. Carriers, Inc.'s Statement of Undisputed Facts, ¶ 4; Pl.'s Resp. to Def. M.S. Carriers' Statement of Facts, ¶ 4; Compl., ¶ 7.)[2]

In this action, because Plaintiffs contend that Defendants Ellis and Nunley are uninsured motorists and Carriers is either the named insured on a policy carrying uninsured motorist coverage or the insurer providing such coverage, they served Carriers with the Complaint. (M.S. Carriers, Inc.'s Mem. in Supp. of its Mot. for Summ. Judg., p. 2.) Having been served with the Complaint, Carriers rightfully filed this pleading in its own name.

The Court notes that it considers itself bound by this section of the Tennessee Code because the determination of the nature of the interest of a party not named in a complaint by a plaintiff appears to be a matter of substantive rather than procedural law. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Collins v. Hamby*, 803 F.Supp. 1302 (E.D.Tenn.1992); *Hillis v. Garner*, 685 F.Supp. 1038 (E.D.Tenn.1988).

---

1. Under Tennessee law, an "insured intending to rely on [uninsured motorist] coverage ... shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or it its own name ..." Tenn.Code Ann. § 56–7–1206(a).

2. Plaintiffs assert that this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because there is complete diversity of citizenship and the amount in controversy exceeds $75,0000. (Compl., ¶¶ 1–8.)

Plaintiffs Maines and McElvain assert that they were parked legally in a Freightliner Classic facing South near an intersection in Shelby County at about 10:10 a.m. (Compl., ¶ 9.) Plaintiffs contend that a Freightliner owned by Defendant Wer–Mac Express, Inc., and operated by its employee, Defendant Hill, was traveling East as it approached this same intersection. *Id.* Plaintiffs maintain that the Freightliner hit a vehicle which was being driven by Defendant Ellis with the knowledge and consent of the owner of the vehicle, Defendant Nunley. *Id.* Plaintiffs contend that the Freightliner driven by Defendant Hill forced the vehicle driven by Defendant Ellis into the parked Freightliner occupied by Plaintiffs. *Id.* Plaintiffs assert that the resulting impact caused them severe and permanent injuries. *Id.* at 10.

Plaintiffs assert that the gross, willfull negligence of Defendant Hill was the actual and proximate cause of the accident and resulting injuries. *Id.* at ¶ 14. Plaintiffs allege that Defendant Wer–Mac Express, Inc. is liable for the actions of its employee, Defendant Hill, under the theory of *respondeat superior.* *Id.* at ¶ 15. Plaintiffs contend that the negligence of Defendant Ellis was also a proximate cause of the accident and resulting injuries. *Id.* at ¶¶ 17–21. Plaintiffs maintain that Defendant Nunley is liable for the accident and injuries because she allowed Defendant Ellis to operate her vehicle. *Id.* at ¶ 20.

At the time of the accident, Plaintiff Maines was an owner-operator who leased his truck to Carriers. (M.S. Carriers, Inc.'s Statement of Undisputed Facts, ¶ 5; Pl.'s Resp. to Def. M.S. Carriers' Statement of Facts, ¶ 5.) In August of 2000, Carriers was the named insured on an insurance policy issued by The Insurance Company of the State of Pennsylvania. *Id.* at ¶ 1. Plaintiffs served Carriers with a copy of the Complaint to put it on notice of a possible uninsured/underinsured motorist ("UM") insurance coverage claim. *Id.* at ¶ 6.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

Carriers makes two arguments in its motion for summary judgment regarding Plaintiffs' claim that Plaintiff Maines is covered by an insurance policy held by Carriers. First, Carriers contends that it does not carry UM insurance coverage under its general commercial liability insurance policy because, pursuant to Tennessee law, it validly rejected such coverage by a signed, written, rejection form. (M.S. Carriers, Inc.'s Mem. in Supp. of Mot. for Summ.Judg., p. 2.) Second, Carriers argues that Plaintiff Maines did not have UM insurance coverage under any

other insurance policy owned by Carriers. *Id.* at 3.

Plaintiffs respond that the policy referred to by Carriers as general commercial liability insurance, is actually excess or umbrella insurance. (Pl.'s Resp. to Def. M.S. Carriers Inc.'s Mot. for Summ.Judg., ¶ 1.) Plaintiffs do not contest that Carriers attempted to waive UM coverage under that policy, but argue that under the terms of the hauling agreement, Carriers did not have "the right to bind the other (plaintiff) by contract, oral or written, express or implied, or otherwise ..." (Pl.'s Mem. in Resp. to Def. M.S. Carriers Inc.'s Mot. for Summ.Judg., p. 5–6.) Plaintiffs argue, in the alternative, that Carriers is self insured, "with a $1,000,000.00 liability limit." (Pl.'s Resp. to Def. M.S. Carriers Inc.'s Mot. for Summ.Judg., ¶¶ 2, 3.) Because Plaintiff Maines did not execute a waiver for UM coverage as is required under Tennessee law, Plaintiffs argue, Carriers is the insurer "for the $1,000,000.00 uninsured motorist coverage available to" Plaintiffs. *Id.* at ¶¶ 4, 5.

Under Tennessee law, "[e]very automobile liability insurance policy delivered, issued for delivery or renewed in this state ... shall include uninsured motorist coverage ..." Tenn.Code Ann. § 56–7–1201(a). The State permits a named insured, however, to reject in writing such coverage completely or to select lower limits of such coverage. Tenn.Code Ann. § 56–7–1201(a)(2).

■ In this case, Carriers was insured by a general commercial liability insurance policy issued by The Insurance Company of the State of Pennsylvania. (Aff. of Lisa Ayotte, ¶ 3.) Although Carriers was given the option of accepting UM coverage, it rejected such coverage in writing. (Aff. of Lisa Ayotte, ¶¶ 4, 5; Exh. A; Exh. B.) It is clear, therefore, that Carriers validly rejected UM coverage under the insurance policy issued by The Insurance Company of the State of Pennsylvania.

Plaintiffs argue that even if the Court finds the rejection of UM coverage under that policy to be valid, Plaintiff Maines was not bound by that rejection. Specifically, Plaintiffs point to a Contract Hauling Agreement, and assert that in order to bind Plaintiff Maines by contract, Carriers needed to have specifically provided authority. (Pl.'s Mem. in Resp. to Def. M.S. Carriers Inc.'s Mot. for Summ.Judg., p. 4–5.)

The Court need not address the terms of the Hauling Agreement because Plaintiffs' argument is incorrect under Tennessee law. "Any document signed by the named insured or legal representative which initially rejects [uninsured motorist coverage] shall be binding upon every insured to whom such policy applies ..." Tenn.Code Ann. § 56–7–1201(a)(2). In construing this section of the Tennessee Code, the Supreme Court of Tennessee determined that the "rights of an additional or omnibus insured can rise no higher than, but are clearly controlled by, the choices and selections of coverage made by the named insured ..." *Burns v. Aetna Casualty & Surety Co.,* 741 S.W.2d 318, 323 (Tenn. 1987). Therefore, despite Plaintiffs' protestations to the contrary, Plaintiff Maines, as an additional or omnibus insured of the named insurer, Carriers, was bound by Carriers' rejection of UM coverage under the insurance policy issued by The Insurance Company of the State of Pennsylvania.

■ Carriers argues next that it is not required to provide UM coverage with re-

spect to its self-insured retention. Under Tennessee law, as was set forth above, every "automobile liability insurance policy" issued in the State must provide UM coverage. Tenn.Code. Ann. § 56–7–1201(a). The insurance policy issued by The Insurance Company of the State of Pennsylvania provided coverage for liability claims in excess of one million dollars ($1,000,000), while Carriers had a self-insured retention of up to one million dollars ($1,000,000) per occurrence. (M.S. Carriers, Inc.'s Reply to Pl.'s Resp. to Mot. for Summ.Judg., Exh. A, E.) The issue is whether the self-insured retention held by Carriers is an automobile liability insurance policy, making it subject to the provisions of Section 56–7–1201 of the Tennessee Code.

Unfortunately, no Tennessee court has addressed the issue of whether a self-insured retention is subject to the UM coverage requirement set forth in Section 56–7–1201 of the Tennessee Code. Carriers cites decisions from numerous other jurisdictions with similar statutory language as persuasive authority for its contention that a self-insured retention is not governed by Section 56–7–1201. The majority of those decisions hold that self insurance is not an "automobile liability insurance policy." *See e.g. O'Sullivan v. Salvation Army*, 85 Cal.App.3d 58, 147 Cal.Rptr. 729, 731–32 (1978); *Hoffman v. Yellow Cab Co. of Louisville*, 57 S.W.3d 257, 261 (Ky.2001); *Grange Mutual Cas. Co. v. Refiners Transp. & Terminal Corp.*, 21 Ohio St.3d 47, 487 N.E.2d 310, 313–14 (1986). The Court is persuaded by the reasoning set forth in those decisions. The Court is also persuaded by Carriers' assertion that the legal definition of self insurance does not fit within the definition of a "contract of insurance" or "motor vehicle liability policy" as set forth in the Tennessee Code. *See*

Blacks' Law Dictionary at 806 (6th ed.1991); *c.f.* Tenn.Code Ann. §§ 56–7–101(a), 55–12–202(7). Moreover, "To read [a rejection requirement] into the law under the pretext of public policy would be to impose a greater burden on a self-insured than is imposed on the named insured of an insurance policy." *Hoffman*, 57 S.W.3d at 261.

The Court therefore determines that Carriers' one million dollar ($1,000,000) self-insured retention is not subject to Section 56–7–1201 of the Tennessee Code. As a result, Carriers was not obligated under Tennessee law to provide UM coverage as part of its self-insured retention. With respect to Tennessee, Carriers did not possess any UM coverage under any insurance policy. (Aff. of Lisa Ayotte, ¶ 6.)

Because there is no genuine issue of material fact that Carriers does not possess any UM insurance coverage in the State of Tennessee, the Court hereby GRANTS summary judgment to Carriers with respect to Plaintiffs' claim of UM insurance coverage.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Carriers' Motion for Summary Judgment. Accordingly, the Court DISMISSES Carriers from this case.