IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 6, 2014 Session

**DENNIS MICHAEL HARRIS ET AL. v. MICKEY DEANNE HAYNES ET AL.**

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Anderson County**
**No. B0LA0333     Donald R. Elledge, Judge**

---

**No. E2012-02213-SC-R11-CV - Filed August 26, 2014**

---

We granted permission to appeal to determine whether a governmental fund established in accordance with Tennessee Code Annotated sections 29-20-401 to -408 (2012), which allows governmental entities to pool resources in order to address liabilities created under the Governmental Tort Liability Act, is subject to the uninsured motorist coverage requirements of Tennessee Code Annotated sections 56-7-1201 to -1206 (2008). We hold that such funds are statutorily exempt from the insurance statutes and therefore the requirements of the uninsured motorist statute do not apply. Accordingly, we affirm the Court of Appeals' judgment upholding the trial court's decision granting summary judgment to Tennessee Risk Management Trust and remand to the trial court for further proceedings consistent with this decision.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Affirmed; Case Remanded to the Trial Court**

CORNELIA A. CLARK, delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, WILLIAM C. KOCH, JR., AND SHARON G. LEE, JJ., joined.

David A. Stuart, Clinton, Tennessee, for the appellants, Dennis Michael Harris and Judy A. Harris.

Jonathan Swann Taylor and Courtney R. Houpt, Knoxville, Tennessee, for the appellee, Tennessee Risk Management Trust.

Robyn Beale Williams and Deanna Lee Fankhauser, Nashville, Tennessee, for the amici curiae, Tennessee Municipal League and Local Government Property and Casualty Fund.

**OPINION**

**I. Facts and Procedural History**

The material facts of this appeal are undisputed. On August 15, 2009, at approximately 11:20 p.m., Dennis Michael Harris, a patrolman with the Anderson County Sheriff's Department, was assisting with traffic control at the scene of a vehicular collision when he was struck by a pickup truck driven by Ms. Mickey Deanne Haynes. Mr. Harris received workers' compensation benefits for his work-related injuries.

In July 2010, Mr. Harris and his wife Judy A. Harris ("Plaintiffs"), sued Ms. Haynes and Richard H. Furrow,[1] the truck's owner, alleging negligence and vicarious liability and seeking damages. The trial court entered a default judgment for Plaintiffs against Ms. Haynes and awarded $1,000,000 in damages to Mr. Harris and $250,000 in damages to Ms. Harris. Neither Ms. Haynes nor Mr. Furrow were insured. As a result, Plaintiffs also made a claim[2] against Tennessee Risk Management Trust ("TRMT"), Anderson County's motor vehicle liability coverage provider, for uninsured[3] motorist coverage.

TRMT is an entity created through interlocal agreements between governmental entities, pursuant to Tennessee Code Annotated sections 12-9-101 to -112 (2011),[4] and under the authority granted by a portion of the Tennessee Governmental Tort Liability Act ("GTLA"). See Tenn. Code Ann. § 29-20-401. Governmental entities participating in TRMT combine their financial and administrative resources to provide risk management,

---

[1] The record on appeal indicates that Mr. Furrow died during the pendency of these proceedings.

[2] Plaintiffs also brought a claim against their own uninsured motorist carrier, which they settled for the policy limit.

[3] The parties use the term "uninsured/underinsured motorist coverage." For ease of reference, we use the term "uninsured motorist coverage" in this opinion to refer to both types of coverage.

[4] This statute is known as the Interlocal Cooperation Act. The purpose of the Act is

> to permit local governmental units the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.

Tenn. Code Ann. § 12-9-102.

insurance, reinsurance, self-insurance, or any combination thereof "for any and all of the areas of liability or insurability, or both, for such governmental entities, including, but not limited to, the liabilities created by [the GTLA] (including general and professional liabilities), liabilities under the workers' compensation law, liabilities under the unemployment compensation law, and motor vehicle insurance." Id. § 29-20-401(b)(1). Anderson County had elected to participate in TRMT a few months prior to Mr. Harris's injury.

Both Plaintiffs and TRMT moved for summary judgment on Plaintiffs' claim for uninsured motorist coverage. The parties agreed that, under the terms of the Coverage Document issued to Anderson County, employees who receive workers' compensation benefits are not also eligible to receive uninsured motorist coverage.[5] However, Plaintiffs argued that this exclusion conflicts with Tennessee Code Annotated section 56-7-1201(a)(1)-(2), which mandates that every automobile liability insurance policy include uninsured motorist coverage equal to the bodily injury limits of the liability policy, unless such coverage is rejected in writing or a lesser uninsured motorist coverage is selected. Tenn. Code Ann. § 56-7-1201(a) (2008). TRMT argued that it is not an insurance company and is therefore not subject to the requirements of the uninsured motorist statute on which Plaintiffs relied.

The trial court granted TRMT summary judgment, finding that TRMT is a "government pool" created as a form of self-insurance pursuant to Tennessee Code Annotated sections 29-20-401 to -408. The trial court did not make a specific finding as to whether the uninsured motorist statute applied to TRMT. Instead, the trial court found that by specifically accepting the Coverage Document, Anderson County had rejected uninsured

---

[5] The Coverage Document TRMT issued to Anderson County provides:

Liability for bodily injury to non-employees and other casual occupants of owned vehicles other than drivers or operators is afforded in respect of any **CLAIM** not to exceed the limits set forth in the Tennessee Tort Liability Act, if applicable, or the limit set forth in the **SCHEDULE OF LIMITS**, regardless of the number of claimants in any one **OCCURENCE**. A **CLAIM** for such coverage may be made to **[TRMT]** only after all other applicable coverage is exhausted and only for the amounts allowed by the Tennessee Tort Liability Act inclusive of any recovery from any other coverage available. This coverage shall not apply to employees, agents or contractors acting on behalf of the **MEMBER** or to any injury covered by Workers['] Compensation Law. The intent of this coverage is to apply to vehicle occupants only, excluding drivers. If coverage is afforded under this section (Automobile Liability paragraph C), then coverage under Auto Liability paragraph "A" does not apply.

motorist coverage for employees as well as those who receive workers' compensation benefits.[6]

Plaintiffs appealed the trial court's judgment. The Court of Appeals affirmed the trial court's grant of summary judgment to TRMT, similarly finding that TRMT is a "risk pool" for schools and governmental entities. The intermediate appellate court explained that, because the governing statute deems TRMT to be a "risk pool" and not an insurance company, the general statute relating to uninsured motorist coverage in liability insurance policies does not apply to the Coverage Document. As a result, the Court of Appeals agreed with the trial court that, under the terms of the Coverage Document, Mr. Harris is excluded from uninsured motorist coverage as an employee and a person who received workers' compensation benefits.

We granted Plaintiffs' Tennessee Rule of Appellate Procedure 11 application for permission to appeal. We also granted the joint request of the Tennessee Municipal League Risk Management Pool and the Local Government Property and Casualty Fund to file a brief and participate in oral argument as amici curiae.

## II. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Thompson v. Memphis City Schs. Bd. of Educ., 395 S.W.3d 616, 622 (Tenn. 2012). The moving party bears the burden of establishing that summary judgment is appropriate as a matter of law, while the court must view the evidence in the light most favorable to the nonmoving party and resolve any genuine issues of material fact in its favor. Id. We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. Id. Issues of statutory construction are also reviewed de novo. Johnson v. Hopkins, 432 S.W.3d 840, 844 (Tenn. 2013); Thompson, 395 S.W.3d at 622.

When determining the meaning of statutes, we follow the standard rules of statutory construction. Our primary goal "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." Johnson, 432 S.W.3d at 848 (quoting Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 895 (Tenn. 2011)). We presume that every word in a statute has meaning and purpose and that each word's meaning should be given full effect as long as doing so does not frustrate the General Assembly's obvious intention. Id. Words

---

[6] The trial court found that Anderson County had met the statutory requirements for rejecting uninsured motorist coverage, and that the actions of the County Commission were the effective equivalent of a rejection "in writing" under Tennessee Code Annotated section 56-7-1201(a)(2).

"'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" Id. (quoting Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012)). When a statute's meaning is clear, we "'apply the plain meaning without complicating the task' and enforce the statute as written." Id. (quoting Lind, 356 S.W.3d at 895).

### III. Analysis

The statute at issue in this appeal is contained within the GTLA, which was enacted in 1973 and which provides a comprehensive scheme governing tort actions against governmental entities. Hawks v. City of Westmoreland, 960 S.W.2d 10, 14 (Tenn. 1997). The GTLA reaffirms the longstanding common law rule of sovereign immunity, stating, in pertinent part, as follows:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a) (Supp. 2013). After reaffirming governmental immunity generally, the GTLA removes governmental immunity in limited and enumerated instances. Id. §§ 29-20-202 to -205 (2012); see also Hawks, 960 S.W.2d at 14.

The portion of the GTLA at issue in this appeal created a means by which governmental entities could pool resources and manage their liabilities without purchasing insurance from traditional insurance companies. This portion of the GTLA provides:

> (b)(1) Any two (2) or more governmental entities are hereby granted the power, any provision of law to the contrary notwithstanding, to enter into an agreement or agreements with one another for joint or cooperative action to pool their financial and administrative resources for the purpose of providing to the participating governmental entities risk management, insurance, reinsurance, which is defined to mean reinsurance by an entity created under this section, self-insurance, or any combination thereof for any and all of the areas of liability or insurability, or both, for such governmental entities, including, but not limited to, the liabilities created by this chapter (including general and professional liabilities), liabilities under the workers' compensation law, liabilities under the unemployment compensation law, and motor vehicle insurance. All such agreements shall be made pursuant to title 12, chapter 9.

. . . .

(c)(1) Any governmental entity choosing to create and maintain a special fund, or to enter into an agreement, as authorized in this section for the purpose of insuring against the liabilities created by this chapter, shall be deemed to be electing to self-insure against the liabilities established in this chapter and shall, therefore, have the same limits of liability as if the minimum limits of liability established in § 29-20-403 had been purchased.

. . . .

(d)(1) No special fund established by an agreement authorized under this section and under title 12, chapter 9, shall be considered as an "insurance company" nor shall any contribution of financial or administrative resources to such a special fund be considered a "premium" or "gross premium" under title 56 for any purpose, including regulation and taxation.

Tenn. Code Ann. § 29-20-401(a), (b)(1), (c)(1), (d)(1).[7]

The foregoing statutory language, in particular section 29-20-401(d)(1), is clear and refutes Plaintiffs' argument in this Court that the Coverage Document TRMT issued to Anderson County is subject to the uninsured motorist statutes, Tennessee Code Annotated section 56-7-1201 to -1206.[8] "No special fund" established under its mandate "shall be considered as an 'insurance company' nor shall any contribution of financial or administrative resources to such a special fund be considered a 'premium' or 'gross premium' under title 56 [the Insurance statutes] for any purpose, *including regulation and taxation*." Id. § 29-20-401(d)(1) (emphasis added). Rather, a governmental entity choosing to enter into an agreement to participate in such a fund "shall be deemed to be electing to self-insure." Id. § 29-20-401(c)(1). The natural and ordinary meaning of the language is straightforward and means that the governmental funds pooled and entities created pursuant to this statute are not insurance companies and are not subject to statutes regulating insurance companies and policies.[9] The uninsured motorist coverage statute on which Plaintiffs rely prescribes the

---

[7] The relevant language of the statute has remained unchanged between the date of Mr. Harris's injuries in 2009 and the present.

[8] Plaintiffs raise two additional arguments in this Court, which are rendered moot by our conclusion that the uninsured motorist statute does not apply to the Coverage Document.

[9] Our reading is based upon the plain language of the statute; however, we note that the legislative
(continued...)

provisions that must be included in "[e]very automobile liability insurance policy delivered, issued for delivery or renewed in this state." Tenn. Code Ann. § 56-7-1201(a). The General Assembly has expressly exempted TRMT from statutes, such as section 56-7-1201(a), regulating insurance companies and insurance policies. Thus, the Coverage Document is not subject to the requirements of the uninsured motorist statute.[10]

Our conclusion that the plain statutory language exempts TRMT from insurance statutes is consistent with how courts in other states have interpreted similar statutes. For example, the Texas Court of Appeals relied upon language in a Texas statute exempting government self-insurance funds from state insurance statutes to hold that such funds are not required to maintain uninsured motorist coverage. Hill v. Tex. Council Risk Mgmt. Fund, 20 S.W.3d 209, 213 (Tex. App. 2000), reh'g overruled (May 23, 2000), petition for review denied, (Tex. Sept. 7, 2000). Similarly, the Ohio Court of Appeals, construing statutory language that "'a joint self-insurance pool is not an insurance company,'" has twice held that Ohio's insurance laws, including its uninsured motorist statutes, do not apply to such government pools. Barrett v. Harleysville Ins. Co. of Ohio, 4th Dist. Cuyahoga No. 82783, 2004 WL 103513, at *4 (Ohio Ct. App. Jan. 22, 2004) (quoting R.C. 2744.081(E)(2)); Caton v. Bd. of Comm'rs, 5th Dist. Muskingum No. CT 2002-0038, 2003 WL 21025887, at *2-3 (Ohio Ct. App Apr. 29, 2003).

Even in the absence of explicit statutory exemptions such as Tennessee's, courts in several other jurisdictions have similarly ruled that such governmental funds are not required

---

[9](...continued)
history surrounding Tennessee Code Annotated section 29-20-401supports our conclusion that such special funds were intended to be exempt from statutes regulating insurance companies and policies. Senator John T. Hicks, the Senate sponsor, explained that a "special fund created per such agreement is not to be considered insurance or subjected to the insurance regulations or taxation." Hearing on S.B. 832 on the Senate Floor, 91st Gen. Assemb. (Tenn. Mar. 29, 1979) (statement of Sen. John T. Hicks).

[10] Even were the Coverage Document subject to the requirements of the uninsured motorist statute, we agree with the Court of Appeals that Anderson County validly and unambiguously rejected uninsured motorist coverage for its employees and those covered by workers' compensation benefits when the Anderson County Commission passed a resolution approving the Coverage Document. See Tenn. Code Ann. § 56-7-1201 ("[A]ny named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage . . . ."). Here, under "Section III Automobile Liability, Uninsured/Underinsured Motorist Liability," the Coverage Document contains the following exemption: "This coverage shall not apply to employees, agents or contractors acting on behalf of the **MEMBER** or to any injury covered by Workers['] Compensation Law." Mr. Harris was an employee of Anderson County and received workers' compensation benefits totaling $81,788.43 in medical expenses and $3,708.86 in disability expenses. Therefore, under the clear terms of the Coverage Document as agreed to by Anderson County and TRMT, Plaintiffs are ineligible to recover uninsured motorist benefits from TRMT.

-7-

to offer uninsured motorist coverage, typically reasoning that such funds are forms of self-insurance that are exempt from the requirements of the uninsured motorist statute.[11] See, e.g., Pritzka v. Village of Lansing, 940 N.E.2d 1164, 1172-73 (Ill. App. Ct. 2010) (determining that because governmental self-insurance pools are not insurance, they are exempt from the state's underinsured motorist statute); City of Gary v. Allstate Ins. Co., 612 N.E.2d 115, 118 (Ind. 1993) (same; citing cases), superseded by statute, Ind. Code § 27-7-5-2 (1998), as recognized in United Nat'l Ins. Co. v. DePrizio, 705 N.E.2d 455, 460 (Ind. 1999); Nassau Ins. Co. v. Guarascio, 442 N.Y.S.2d 83, 88 (N.Y. App. Div. 1981) (determining that self-insured municipalities are statutorily exempt from uninsured motorist coverage); Ellis v. R.I. Pub. Transp. Auth., 586 A.2d 1055, 1058-61 (R.I. 1991) (holding that a self-insured municipality, like all self-insurers, is exempt from the statutory requirement to provide uninsured motor vehicle coverage). Cf. Ga. Interlocal Risk Mgmt. Agency v. Godfrey, 699 S.E.2d 377, 378-79 (Ga. Ct. App. 2010) (holding that the city was not obligated to offer uninsured motorist coverage because the self-insurance provided by the interlocal risk management program did not provide such coverage and municipal immunity was waived only to the extent that coverage was provided); City of Laramie v. Facer, 814 P.2d 268, 271 (Wyo. 1991) (holding that government-pooled funds are not insurance).

We hold that Tennessee Code Annotated section 29-20-401(d)(1) plainly exempts special funds created by agreement of governmental entities and consisting of the pooled funds of governmental entities from Tennessee's insurance statutes.[12] Here, precisely because

---

[11] The Court of Appeals in this case relied on Maines v. Hill, 190 F. Supp. 2d 1072, 1076 (W. D. Tenn. 2002) to support its conclusion that the uninsured motorist statute does not apply to the Coverage Document. The federal court in Maines held that, under Tennessee law, a private self-insured entity is not subject to the uninsured motorist statute. Maines is distinguishable on its facts from this case, as it involved a private entity. Thus, we need not and do not rely upon or embrace the reasoning of Maines in resolving this appeal. We note, however, that other courts have also held that private self-insured entities are not subject to a state's uninsured motorist statute. See O'Sullivan v. Salvation Army, 147 Cal. Rptr. 729, 731-32 (Cal. Ct. App. 1978); Hoffman v. Yellow Cab Co. of Louisville, 57 S.W.3d 257, 261 (Ky. 2001); Grange Mut. Cas. Co. v. Refiners Transp. & Terminal Corp., 487 N.E.2d 310, 313-14 (Ohio 1986); see generally Lee R. Russ, Annotation, Applicability of Uninsured Motorist Statutes to Self-Insurers, 27 A.L.R.4th 1266 (1984); 1A Steven Plitt, et. al., Uninsured or Underinsured Motorist Insurance Requirements, Couch on Insurance § 10:3 (3d ed. 2013). But see Associated Indus. of Ky. v. U.S. Liab. Ins. Grp., 531 F.3d 462, 467 (6th Cir. 2008) (holding that private group self-insurance funds are insurance under Kentucky law for the purpose of interpreting a joint and several liability provision).

[12] Although we have resolved this issue based upon the plain language of the statute, we note that the legislative history of Tennessee Code Annotated section 29-20-401 supports our conclusion. See Hearing on S.B. 832 on the Senate Floor, 91st Gen. Assemb. (Tenn. Mar. 29, 1979) (statement of Sen. John T. Hicks) ("Any special fund created [pursuant to section 29-20-401] is not to be considered insurance or subjected to the insurance regulations or taxation.").

-8-

the insurance statutes do not apply, the uninsured motorist vehicle coverage statute is necessarily inapplicable and cannot be written into the Coverage Document TRMT issued to Anderson County.  Because Plaintiffs are excluded from uninsured motorist coverage by the terms of the Coverage Document, Plaintiffs cannot recover from TRMT. Thus, the courts below properly granted TRMT summary judgment.

## IV. Conclusion

We hold that a governmental fund established in accordance with Tennessee Code Annotated sections 29-20-401 to -408, is exempt from the requirements of Tennessee's insurance statutes and therefore need not comply with the requirements of the uninsured motorist statute, Tennessee Code Annotated section 56-7-1201.  Because the Coverage Document TRMT issued to Anderson County specifically excluded employees and those who receive workers' compensation benefits from uninsured motorist coverage and TRMT is not otherwise required to offer such coverage, Plaintiffs may not recover from TRMT.  Accordingly, we affirm the Court of Appeals' judgment, which upheld the trial court's decision granting summary judgment to TRMT.  The costs of this appeal are taxed to Plaintiffs, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE