IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2015 Session

IN RE SERENITY W. M.

Appeal from the Juvenile Court for Campbell County
No. 2014-JC-177     Joseph M. Ayers, Judge

No. E2014-01802-COA-R3-JV – Filed July 23, 2015

This case involves a dispute regarding the custody of Serenity W.M. (the Child), the minor daughter of Matthew Ryan Martin (Father) and Natasha Amber Nichole[1] Martin (Mother). Shortly after the Child's birth, a state district court in the Commonwealth of Kentucky entered an order granting temporary custody of the Child to her maternal uncle, Christopher Mayo, and his wife, Natasha Cima (collectively Petitioners). Later, Petitioners filed a petition in the Tennessee trial court seeking (1) enforcement of the Kentucky order and (2) emergency custody of the Child. Following a hearing in Tennessee, the trial court granted the petition and ordered that custody would remain with Petitioners pending further proceedings in Kentucky. Father and Mother appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Mark R. Orr, Knoxville, Tennessee, for the appellants, Matthew Ryan Martin and Natasha Amber Nichole Martin.

Terry M. Basista, Jacksboro, Tennessee, for the appellees, Christopher Mayo and Natasha Cima.

---

[1] The record reflects this part of Mother's name in two different spellings, *i.e.*, "Nichole" and "Nichol." We have chosen the former as the more likely correct spelling.

1

# OPINION

## I.

The Child was born June 16, 2014, in Jellico, Campbell County, Tennessee, to Mother and Father, who at the time were unmarried.[2] Her birth certificate reflects that her parents were both born in Kentucky. The same certificate, however, reflects that Mother's residence is a street address in Jellico. On June 25, 2014, an "Amended Temporary Custody Order"[3] was entered by the Whitley County District Court, 34th Judicial District, Commonwealth of Kentucky. The Kentucky order, simply stated, reflects that, following a hearing, a Whitley County district court judge granted Petitioners' request for temporary custody of the Child based upon its determination that the action was in the best interest of the Child. The Kentucky order further authorized "any peace officer" to accompany Petitioners to obtain custody of the Child. Two days later, on June 27, Petitioners filed a petition in the trial court to enforce the Kentucky order and to obtain emergency custody of the Child. The same day, the trial court, by emergency ex parte order, granted the petition based on "the exigencies of the circumstances" and awarded temporary custody of the Child to Petitioners, thereby enforcing the Kentucky order. The trial court further authorized any law enforcement officer in Campbell County to accompany Petitioners,

> to wherever the said minor child may be found in the county using whatever lawful force may be necessary [to] take said child bodily and place her into the care and custody of the Petitioners who are in turn authorized to take said child with them to return to Kentucky whereby all matters relating to the said child may be dealt with lawfully by the Commonwealth of Kentucky.

Finally, the trial court issued a temporary restraining order prohibiting Father and Mother from interfering with Petitioners' custody of the Child during the pendency of this custody dispute. In their appellate brief, Father and Mother state that, pursuant to the trial court's order, and on the same day the Tennessee order was entered, the Child was removed from their custody, placed in Petitioners' custody, and taken to Kentucky. It is clear that the Petitioners reside in Kentucky.

---

[2] Pleadings in the record suggest that Father and Mother have since married.
[3] The record before us does not include the prior order of the Kentucky court, nor does it reflect its provisions.

Following a later hearing in the Tennessee court, on July 2, 2014, the court held that the Kentucky court "had proper jurisdiction over the parties and minor child in this cause and that the Amended Temporary Custody Order issued by that court . . . should be enforced." On August 22, 2014, the trial court further held that "all matters relating to custody of the minor child . . . should be heard by that [Kentucky] court for further determination."

Father and Mother filed a timely notice of appeal.

## II.

As taken verbatim from their brief, Father and Mother raise a single issue for our review:

> Did the trial court err in holding that the Whitley County, Kentucky[,] District Court had jurisdiction over the minor child and the Order of Custody of that court was entitled to enforcement?

Our standard of review in this case is de novo. "Whether a court has jurisdiction is a question of law over which our review is de novo with no presumption of the correctness of the ruling of the lower courts." *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006). "Issues of statutory construction are also reviewed de novo." *Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014) (internal citation omitted).

## III.

The parents argue that the Kentucky court was without jurisdiction to enter its order. They assert that the judgment should be reversed because of the Kentucky court's lack of jurisdiction over the Child – an issue which, as the parents see it, the Tennessee trial court failed to address when it decided to enforce the Kentucky order. Petitioners' response is as follows:

> [T]he Tennessee trial court strictly speaking did not actually determine whether or not the Kentucky Court had jurisdiction when the Kentucky court issued the . . . [amended temporary custody order], but rather the Tennessee trial court determined that the Kentucky Court had made a determination that it did have jurisdiction of [Father and Mother] and of the minor child, and the Tennessee trial court

3

further held that the Kentucky order was entitled to full faith and credit and enforcement. . . .

In their petition to enforce the Kentucky order, Petitioners aver that "Kentucky has jurisdiction of this said minor child, and Tennessee has emergency jurisdiction of the said child due to the child's presence in Tennessee, and Tennessee has jurisdiction and right to enforce the orders of another state." Father and Mother did not answer the petition in writing. At the hearing, they argued, through counsel, that the Kentucky court lacked jurisdiction, under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), as codified in each of the two states, to enter the order given that the Child was born in and removed from Tennessee. As the trial court put it, the gist of parents' argument is that the Kentucky court issued a "bad order," and the Tennessee trial court erroneously enforced it. At the hearing in Tennessee, counsel for the parents argued that, when the Child was taken, both parents and the Child resided in Tennessee, and that they had no notice of the Kentucky custody proceeding. No testimony or other proof was received into evidence during the hearing.[4] Father and Mother did not file a written pleading, affidavit, or other document with the trial court. The only piece of "evidence" included in the very short technical record is the Child's birth certificate, attached as an exhibit to Petitioners' pleading. Consequently, very few facts are established by the record in this case.

We quote pertinent portions of the colloquy between counsel and the court:

> The Court: I will say this, the order out of Kentucky . . . does not appear to be – an ex parte order; it appears to be what I would call a final order.
>
> And by that – and I know it says Temporary Custody Order, but to me it's temporary in the same regard that all custody orders are temporary as they relate to minor children.
>
> \*     \*     \*
>
> Mr. Orr [counsel for Father and Mother]: . . . The child was here, present physically in Tennessee, when taken. And the parents resided here in Tennessee.

---

[4] As we have previously observed, "statements of counsel during the course of a hearing are not evidence." *Oakes v. Oakes*, 235 S.W.3d 152, 158 (Tenn. Ct. App. 2007); *Liput v. Grinder*, 405 S.W.3d 664, 670 (Tenn. Ct. App. 2013) ("It is well settled that statements of counsel are not evidence.").

4

Mr. Basista [counsel for Petitioners]: None of that matters, Your Honor.

Mr. Orr: If you look at Kentucky's UCCJEA statute, there's no jurisdiction. So if a Court doesn't have jurisdiction, how can there be a [valid] order?

\*　　\*　　\*

The Court: That's kind of the problem. They got an order out of Kentucky, and I don't know how I can have a hearing. . . . I follow what you're saying, but the problem that I have, and I think that you probably have, is I don't know how I can determine the validity of the Kentucky order.

\*　　\*　　\*

Mr. Basista: [T]his is actually a straightforward matter as far as today is concerned. I have in my hand a certified true copy of an order out of the State of Kentucky signed by a judge.

I have no clue as to anything that went on in procuring this order or the hearing itself. But under the Constitution of the United States and the State of Tennessee this order is entitled to full faith and credit in every state of the union.

Now, . . . jurisdiction of a child follows that of the parents. So I'm presuming at some point Kentucky had jurisdiction of the parents . . . .

But in any event, our petition simply sought to enforce what appears to be a lawful order of the State of Kentucky.

I think the decision as to whether this is a good order, a bad order, or whether it was appropriate or wrongly procured rests with this court in Kentucky.

The Court: I don't think there's any question about that.

\*　　\*　　\*

5

I can't revisit what Kentucky took up. I don't know factually what they decided on the issue of jurisdiction. [T]hey had to have made that determination. It's not clear in this order, but I'll again say that this says an amended order. . . .

\* \* \*

I think it's appropriate and I will try to contact in one hour[,] with you all present[,] the judge that issued the order from Kentucky.

During a recess, the Tennessee judge, in the presence of the attorneys for both sides, talked with the Kentucky judge by phone regarding the issue of jurisdiction. After reconvening the hearing, the trial court advised the parties as follows:

[W]ith your attorneys I contacted the judge who had issued the order out of Kentucky. And as I thought earlier, but confirmed with her, Kentucky has made a finding that they have . . . home state jurisdiction, that there was knowledge of the hearing where she granted temporary custody to Mr. Mayo and Ms. Cima.

And I do not think that I have any authority to undo or revisit a Kentucky order. I think that has to be done in Kentucky.

And one thing [the Kentucky judge] did spell out was that it is not on the docket at this time up there. . . but that either party . . . can get on the docket up there to have that case heard further.

I think that's the only answer that I have at this time, that you all are going to have to litigate it in Kentucky where it was issued.

The trial court did not make any findings of fact resulting from its conversation with the Kentucky judge, nor did it discuss any factual basis upon which the Kentucky court may have made its determination that it had jurisdiction. To the extent that this lack of factual findings may be argued by one of the parties to be erroneous, we note that neither party asked the trial court to make findings of fact, nor did either party ask the trial court to elaborate upon the factual basis for the Kentucky court's exercise of jurisdiction. Tenn. R. App. P. 36(a) admonishes that

6

> [n]othing in this rule shall be construed as requiring relief be granted *to a party* responsible for an error or *who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error*.

(As should be obvious, we have added this emphasis to the language of the rule.)

The trial court's final order, entered August 22, 2014, provides in pertinent part:

> It appearing to the Court that the 34th Judicial Circuit, Whitley [County] District Court had proper jurisdiction over the parties and minor child in this cause and that the Amended Temporary Custody Order issued by that court on June 24, 2014 should be enforced, accordingly. As such, all matters relating to custody of the minor child at issue should be heard by that court for further determination.
>
> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:
>
> 1. That the Amended Temporary Custody Order of the Whitley [County] District Court, having proper jurisdiction, is entitled to enforcement and temporary custody of Serenity [W.M.] should remain with the Petitioners, in accordance with that Order.
>
> 2. That the Motion for Issuance of Temporary Restraining Order and all other issues shall be determined by the Whitley [County] District Court having proper jurisdiction over the minor child and related issues in this cause.

(Capitalization in original.)

Before us, Petitioners assert that, under the circumstances presented, the trial court correctly determined that the Kentucky order must be enforced and that further proceedings regarding custody of the Child are properly addressed to the Kentucky court that made the initial custody determination. In short, we agree with Petitioners' position. We further agree with the trial court's decision that, under the circumstances presented here, the question of whether Kentucky correctly exercised jurisdiction under the

7

applicable statutory schemes, including the UCCJEA, is properly decided by a Kentucky court.

The UCCJEA is codified at Tenn. Code Ann. §§ 36-6-201, et seq., and "governs jurisdiction between Tennessee and other states over child custody proceedings." **Blake v. Blake**, No. M2014-01016-COA-R3-CV, 2015 WL 1510663 at *3 (Tenn. Ct. App. M.S., filed Mar. 30, 2015) (quoting **Button v. Waite**, 208 S.W.3d 366, 369 (Tenn. 2006)). The stated purposes of the UCCJEA are to:

> (1) *Avoid jurisdictional competition and conflict with courts of other states in matters of child custody* which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
>
> (2) *Promote cooperation with the courts of other states* to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
>
> (3) Discourage the use of the interstate system for continuing controversies over child custody;
>
> (4) Deter abductions of children;
>
> (5) *Avoid relitigation of custody decisions of other states* in this state; and
>
> (6) *Facilitate the enforcement of custody decrees of other states.*

*Id.* (quoting Tenn. Code Ann. § 36-6-202) (emphasis added).

In furtherance of these stated purposes, Tenn. Code Ann. § 36-6-227 provides for the recognition and enforcement of child custody determinations of other states, stating:

> (a) A court of this state shall recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this part, or the determination was made under factual circumstances meeting the jurisdictional standards of this part and the determination has not been modified in accordance with this part.

8

(b) A court of this state may utilize any remedy available under other law of this state to enforce a child-custody determination made by a court of another state. The remedies provided in this part are cumulative and do not affect the availability of other remedies to enforce a child-custody determination.

The UCCJEA also includes provisions for the exercise of emergency jurisdiction by a court. More specifically, Tenn. Code Ann. § 36-6-219 provides, in its entirety, as follows:

(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

(b) If there is no previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has not been commenced in a court of a state having jurisdiction under §§ 36-6-216 – 36-6-218, a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under §§ 36-6-216 – 36-6-218. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under §§ 36-6-216 – 36-6-218, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

(c) If there is a previous child custody determination that is entitled to be enforced under this part, or a child-custody proceeding has been commenced in a court of a state having jurisdiction under §§ 36-6-216 – 36-6-218, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under §§ 36-6-216 – 36-6-218. The order issued in this state remains in effect until an order is obtained

9

from the other state within the period specified or the period expires.

(d) A court of this state which has been asked to make a child-custody determination under this section, upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of a state having jurisdiction under §§ 36-6-216 – 36-6-218, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to §§ 36-6-216 – 36-6-218, upon being informed that a child custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

Tenn. Code Ann. § 36-6-219(a) – (d). This Court has observed that subsection (a) makes clear that "emergency jurisdiction is temporary." *In re Lillian F.W*., No. M2012-01450-COA-R3-CV, 2013 WL 5498111 at *6 (Tenn. Ct. App. M.S., filed Sep. 30, 2013).

In the present case, Petitioners essentially sought, on an emergency basis, enforcement of the Kentucky temporary custody order. In support of the petition, Petitioners asserted that Mother had already lost custody of three other children and that Father "has a history of substance abuse and of convictions relating to serious harm to [a] minor child and has been ordered not to be around children." The trial court found in its June 27 temporary custody order that the "exigencies of the circumstances" warranted ex parte emergency relief. On hearing the matter five days later, and after communicating by phone with the Kentucky court that made the initial custody determination, the trial court concluded that a custody determination had been made by a court having jurisdiction over the Child and the parties and that the subject court's order should be enforced. Accordingly, the trial court essentially left its emergency custody order in place and directed the parties to return to the Kentucky court for further determinations regarding the custody of the Child.

We hold the trial court, in its initial determination, properly exercised emergency jurisdiction over the Child, who was then in Tennessee. Notably, Father and Mother did not answer the petition or at any point challenge the allegations in support of the need for temporary, emergency relief. In our view, the only problem in the trial court's exercise

10

of emergency jurisdiction is that the resulting order of enforcement/temporary custody order did not specify when the trial court's emergency jurisdiction would end. Stated differently, the trial court's order clearly contemplated further proceedings in Kentucky, but it does not specify when the trial court's emergency jurisdiction would cease to exist. In *Button v. Waite*, the Supreme Court stated that "[t]emporary emergency jurisdiction is not intended to provide a state with modification jurisdiction for an indefinite period of time." 208 S.W.3d at 370. The High Court thus concluded that we had properly vacated the trial court's order in that case which provided for its temporary emergency jurisdiction to continue indefinitely and "for all purposes." *Id.* Based on the foregoing, we conclude that the trial court properly exercised emergency jurisdiction to enforce the Kentucky amended temporary custody order in favor of Petitioners. To the extent that the court failed to specify the duration of its emergency jurisdiction over the Child, we modify the August 22, 2014 order to provide that the trial court's emergency jurisdiction ended following thirty days after its entry. In all other respects, the judgment is affirmed.

IV.

The judgment of the trial court is affirmed as modified. Costs on appeal are assessed to the Appellants, Matthew Ryan Martin and Natasha Amber Nichole Martin. This case is remanded, pursuant to applicable law, for the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

11